1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MORRIS MESTER,

11         Plaintiff,              No. 2:09-cv-3307 KJM KJN P

12      vs.

13   MILLER AND REED,

14         Defendants.            FINDINGS & RECOMMENDATIONS

15   _____/

16         Plaintiff is a state prisoner, presently housed at Pleasant Valley State Prison,

17   Coalinga, California ("PVSP"), proceeding without counsel.  Plaintiff's motions for preliminary

18   injunctive relief are now before the court.  (Dkt. Nos. 69, 70, 71, 74, 78 & 80.)  Pursuant to this

19   court's briefing order, defendants filed an opposition to plaintiff's motions on May 25, 2011.

20   (Dkt. No. 82.)  Plaintiff did not file a reply.  As discussed more fully below, plaintiff's motions

21   for injunctive relief should be denied.

22         In his May 2, 2011 motion, plaintiff seeks a court order requiring plaintiff to be

23   hospitalized.  (Dkt. No. 69.)  In plaintiff's May 3, 2011 motion, plaintiff seeks an order providing

24   him single cell status or to be hospitalized for his polyneuropathy.  (Dkt. No. 70.)  In the May 5,

25   2011 motion, plaintiff complains about a lack of treatment at High Desert State Prison, but again

26   reiterates his alleged need for hospitalization.  (Dkt. No. 71.)  Plaintiff avers he faces imminent

1   harm from demyelinating polyneuropathy.  (Id.)  In plaintiff's May 9, 2011 motion, plaintiff

2   claims Dr. Chokatos refused to (a) hospitalize plaintiff on April 28, 2011, (b) give plaintiff pain

3   medication, and (c) refer plaintiff to another neurologist.  (Dkt. No. 74.)  Plaintiff claims he

4   needs to be hospitalized immediately.  Plaintiff argues that unidentified persons at PVSP have

5   "literally stopped treating plaintiff, period, out of reprisals/discrimination."  (Dkt. No. 75 at 1.)

6   Plaintiff claims an unidentified doctor is ignoring plaintiff's severe demyelinating

7   polyneuropathy.  (Id.)  Plaintiff states he has been denied surgery for his forearm and wrists.

8   Plaintiff also claims he is in excruciating pain and that unidentified persons "refuse any kind of

9   appropriate pain medicines to control severe pain that affects plaintiff's daily activities and

10  sleep."  (Dkt. No. 75 at 2.)  Plaintiff asks the court to act immediately to get plaintiff to a hospital

11  before he suffers irreparable injury.  On May 16, 2011, plaintiff filed another motion claiming

12  Dr. Chokatos makes false diagnoses.  (Dkt. No. 78.)  Plaintiff states he went to pain management

13  on May 11, 2011, but was given "absolutely nothing for pain."  (Dkt. No. 78 at 2.)  Plaintiff

14  states he "can literally die in [his] cell because of not establishing a diagnosis for this painful

15  polyneuropathy coupled with excruciating pain."  (Dkt. No. 78 at 3.)  Plaintiff states he cannot

16  leave his cell because of the severe pain.  Plaintiff provided an incomplete copy of a March 1,

17  2011 medical record from Marshall S. Lewis, M.D., setting forth an impression of "severe

18  degenerative osteoarthritis bilateral hips," and stating Dr. Lewis believes plaintiff requires

19  evaluation for a total hip replacement and would be referred to Dr. Young Paik for evaluation.

20  (Dkt. No. 78 at 5.)  Plaintiff was prescribed Ultram for analgesia.  (Id.)  On May 18, 2011,

21  plaintiff filed a motion to be hospitalized or transferred away from SVSP.  (Dkt. No. 80.)

22          In opposition, defendants state that plaintiff is not in danger of irreparable injury

23  because plaintiff's claim of medical emergency is false.  (Dkt. No. 82 at 1.)  Defendants provide

24  the declaration of Dr. Duenas, a physician familiar with plaintiff's medical condition.  Dr.

25  Duenas opines that there is no indication plaintiff has an emergent medical condition or that he

26  requires immediate hospitalization.  (Dkt. No. 82-1 at 2.)  Dr. Duenas opines that plaintiff

1    "shows no evidence of respiratory or circulatory impairments that would require emergency

2    treatment or hospitalization." (Id.)  Dr. Duenas states that plaintiff "has received regular and

3    frequent medical attention, including speciality consultations, medication, and treatment through

4    providers at PVSP and through specialists via telemedicine and appointments outside the prison."

5    (Id.)  Dr. Duenas states that plaintiff has not been denied any medically necessary treatment or

6    medication for his conditions.  Defendants provided a May 3, 2011 Updated Summary of

7    Problems, written by Dr. Chokatos, and setting forth specific information concerning plaintiff's

8    medical complaints and treatment.  Included is an assessment that a "total hip arthroplasty is not

9    indicated at this time." (Dkt. No 82-1 at 9.)  Dr. Chokatos noted that narcotics are not indicated

10   because plaintiff's "calm demeanor and relatively unimpaired gait are not consistent with the

11   intensity of pain alleged." (Id.)

12            In addition, Dr. Chokatos included a separate section entitled "Pain as a Separate

13   Issue, Drug Seeking Behavior, Dissimulation," in which Dr. Chokatos describes plaintiff's

14   history of "drug-seeking behavior with symptom exaggeration and manipulation, aimed at getting

15   the largest amount of drugs and sedating medications possible." (Dkt. No. 82-1 at 10.)  Dr.

16   Chokatos noted that plaintiff

17            has a chrono from May 9, 2007, documenting a videotape from
              April 23, 2007, in which [plaintiff] was videotaped playing
18            basketball, running in place and completing an exercise routine of
              burpee's and sit-ups.  When confronted over this by D.M. Perry,
19            M.D. 12/21/2007, [plaintiff] alleged that this was "retaliation" and
              that it had been an "exaggeration" of his actual exercise pattern.
20            He also said that he would be more active if he was given the
              narcotics he is seeking.  [At the time he was filmed participating in
21            vigorous exercises he was being treated with narcotics for hip
              disease and was using an assist device (cane)].

22

23   (Dkt. No. 87-1 at 10.)  Dr. Chokatos recounted plaintiff's objections to the prescription of crush-

24   and-float morphine rather than immediate release morphine tablets.  (Id.)  In assessment, Dr.

25   Chokatos found:

26            1.  Evidence of a significant functional impairment due to pain or

                                                3

1    disease is absent.

2        2.  [Plaintiff's] allegation that crushed morphine is ineffective
         compared to a tablet leads to one inescapable conclusion:  he is
3        seeking a more marketable form of that drug.

4        3.  The prescribed opioid anodynes which [plaintiff] had been
         receiving for the past 20 years probably were never being used by
5        the patient at all.

6        4.  The diagnosis of epilepsy is not established.

7        5.  The EMG finding demyelinating polyneuropathy is only that:
         an abnormal report.  [Plaintiff] is functionally unimpaired.

8

9    (Dkt. No. 82-1 at 11.)

10       Plaintiff did not reply to defendants' opposition.

11       A  temporary restraining order is an extraordinary and temporary "fix" that the

12   court may issue without notice to the adverse party if, in an affidavit or verified complaint, the

13   movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the

14   movant before the adverse party can be heard in opposition."  See Fed. R. Civ. P. 65(b)(1)(A).

15   The purpose of a temporary restraining order is to preserve the status quo pending a fuller

16   hearing.  See generally, Fed. R. Civ. P. 65; see also, E.D. Cal. L. R. ("Local Rule") 231(a).  It is

17   the practice of this district to construe a motion for temporary restraining order as a motion for

18   preliminary injunction.[1]

19       A preliminary injunction should not issue unless necessary to prevent threatened

20   injury that would impair the court's ability to grant effective relief in a pending action.  Sierra

21   On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984); Gon v. First State

22   Ins. Co., 871 F.2d 863 (9th Cir. 1989).  A preliminary injunction represents the exercise of a far

23   reaching power not to be indulged except in a case clearly warranting it.  Dymo Indus. v.

24   _____

25       [1]  See, e.g., Aiello v. OneWest Bank, 2010 WL 406092, *1 (E.D. Cal. 2010) (providing
     that "[t]emporary restraining orders are governed by the same standard applicable to preliminary
26   injunctions") (citations omitted).

1   Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964).  "The proper legal standard for preliminary

2   injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he

3   is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

4   equities tips in his favor, and that an injunction is in the public interest.'"  Stormans, Inc. v.

5   Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting Winter v. Natural Res. Def. Council, Inc,

6   129 S.Ct. 365, 375-76 (2008).  In cases brought by prisoners involving conditions of

7   confinement, any preliminary injunction "must be narrowly drawn, extend no further than

8   necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive

9   means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

10          Initially, the principal purpose of preliminary injunctive relief is to preserve the

11  court's power to render a meaningful decision after a trial on the merits.  See 11A Charles Alan

12  Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010).  As noted

13  above, in addition to demonstrating that he will suffer irreparable harm if the court fails to grant

14  the preliminary injunction, plaintiff must show a "fair chance of success on the merits" of his

15  claim.  Sports Form, Inc. v. United Press International, Inc., 686 F.2d 750, 754 (9th Cir. 1982)

16  (internal citation omitted).  Implicit in this required showing is that the relief awarded is only

17  temporary and there will be a full hearing on the merits of the claims raised in the injunction

18  when the action is brought to trial.  In addition, as a general rule this court is unable to issue an

19  order against individuals who are not parties to a suit pending before it.  Zenith Radio Corp. v.

20  Hazeltine Research, Inc., 395 U.S. 100 (1969).

21          Plaintiff has failed to rebut defendants' medical evidence demonstrating plaintiff

22  is not facing a medical emergency warranting intervention under the All Writs Act.[2]  Moreover,

23

24          [2] The All Writs Act, 28 U.S.C. § 1651(a) permits the court to issue writs "necessary or
    appropriate in aid of their jurisdictions and agreeable to the usages and principles of law."  The
25  All Writs Act is meant to aid the court in the exercise and preservation of its jurisdiction.  Plum
    Creek Lumber Company v. Hutton, 608 F.2d 1283, 1289 (9th Cir. 1979).  The United States
26  Supreme Court has authorized the use of the All Writs Act in appropriate circumstances against

1   mere differences of opinion between a prisoner and prison medical staff as to appropriate

2   medical care also do not give rise to a § 1983 claim.  Franklin v. Oregon, 662 F.2d 1337, 1344

3   (9th Cir. 1981).  Accordingly, plaintiff's motions for injunctive relief should be denied on the

4   merits.

5          In addition, plaintiff's motions should be denied because they are unrelated to

6   plaintiff's underlying claims.  In the instant action, plaintiff alleges, *inter alia*, that defendants,

7   employed at California Medical Facility, placed a false conviction of forcible rape in his prison

8   record for retaliatory purposes.  (Dkt. No. 1.)  Plaintiff's allegations are based on incidents

9   alleged to have occurred in 2009 and before.  The instant complaint does not contain any

10  allegations concerning medical care.  At the time plaintiff filed the instant complaint, he was

11  housed at High Desert State Prison in Susanville, California, and was subsequently transferred to

12  PVSP in Coalinga, California, where he is presently housed.  Therefore, the claims on which

13  plaintiff's motions are predicated are not included in the complaint on which this action is

14  proceeding.  For that reason, the claims will not be given a hearing on the merits at trial.  Further,

15  as discussed above, these claims do not implicate this court's jurisdiction in a way that might

16  justify application of the All Writs Act to reach officials at PVSP who are not named in the

17  underlying litigation.[3]

18         For all of the above reasons, plaintiff's motions for injunctive relief should be

19  denied.

20         Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motions for

21  preliminary injunctive relief (dkt. nos. 69, 70, 71, 74, 78 & 80) be denied.

22  _____

23  persons or entities not a party to the underlying litigation.  United States v. New York Telephone
    Co., 434 U.S. 159, 174 (1977).

24      [3] As plaintiff has been previously informed, if plaintiff claims prison officials at PVSP
    have been or are being deliberately indifferent to plaintiff's serious medical needs, plaintiff must
25  exhaust his administrative remedies in connection with those claims and then, if unsatisfied,
    plaintiff may file a civil rights action in the Fresno Division of the Eastern District of California.
26  (See Dkt. No. 66.)

1        These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

3   one days after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6   objections shall be filed and served within fourteen days after service of the objections.  The

7   parties are advised that failure to file objections within the specified time may waive the right to

8   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9   DATED:  June 23, 2011

10

11   _____

    KENDALL J. NEWMAN

12       UNITED STATES MAGISTRATE JUDGE

13   mest3307.pi2

14

15

16

17

18

19

20

21

22

23

24

25

26