IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MORRIS MESTER,

     Plaintiff,              No. 2:09-cv-3307 KJM KJN P

     vs.

K. DICKINSON, et al.,

     Defendants.            FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

       Plaintiff is a state prisoner proceeding without counsel and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant Miller's[1] November 18, 2010 motion to dismiss filed on the grounds that plaintiff failed to exhaust administrative remedies, and motion for summary judgment on the grounds that undisputed facts show that defendant Miller did not violate plaintiff's constitutional rights in 2009, and plaintiff's pre-2009 claims are barred by the statute of limitations.  After carefully reviewing the record, the undersigned concludes that defendant's motion to dismiss should be granted.

_____

[1]  Although defendants Robertson and Sinkovich joined in the pending motion, both of these defendants were voluntarily dismissed on December 21, 2010.  (Dkt. No. 55.)  The remaining defendants, except for defendant Reed, were dismissed on October 6, 2010.  (Dkt. No. 36.)

II.  Plaintiff's Complaint

Plaintiff contends that in 1996 defendant A. Miller allegedly told plaintiff's classification committee that plaintiff was convicted of forcible rape, rather than statutory rape. (Dkt. No. 1 at 2.)  Defendant Miller allegedly raised plaintiff's points to 52 and requested that plaintiff be transferred to Pelican Bay State Prison.  (Id.)  Plaintiff states he was transferred to CMC-East, where his points were reduced to 46 and the forcible rape conviction was changed back to statutory rape.

In 2000, plaintiff was transferred to California Medical Facility ("CMF"). Plaintiff contends defendant A. Miller showed up at plaintiff's classification hearing and again told the committee that plaintiff was convicted of forcible rape and allegedly blotted out plaintiff's "S" suffix designating plaintiff for single cell status.  Plaintiff filed a lawsuit to have this designation corrected, and was allegedly placed in administrative segregation ("ad seg"). Plaintiff states the Inspector General investigated plaintiff's claims, plaintiff was transferred to Pleasant Valley State Prison, and the 1968 conviction was corrected to read statutory rape.  (Id. at 3.)

On April 9, 2009, plaintiff was transferred back to CMF.  Plaintiff alleges that he was returned to ad seg on April 15, 2009, based on 2000 charges that plaintiff was being over familiar with M.T.A. Reed.  Plaintiff contends the paperwork resulting in his 2009 placement in ad seg was written after plaintiff arrived at CMF.  Plaintiff contends defendant A. Miller was still a counselor at CMF, and alleges defendant Miller conspired with defendant Reed to have plaintiff held in ad seg.  Plaintiff also contends that upon his return to CMF, defendant Miller allegedly changed plaintiff's conviction back to forcible rape rather than statutory rape.

////

////

////

////

2

1   III.  Motion to Dismiss

2         Defendant provided evidence regarding plaintiff's administrative appeals.  (Dkt.

3   No. 53-1.)  Plaintiff filed a verified opposition.[2]  No reply was filed by defendant.

4         A.  Legal Standard re Exhaustion

5         The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e

6   to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

7   § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

8   facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

9   Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S.

10  516, 524 (2002).  Exhaustion is a prerequisite for all prisoner suits regarding conditions of

11  confinement, whether they involve general circumstances or particular episodes, and whether

12  they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.

13        Exhaustion of all "available" remedies is mandatory; those remedies need not

14  meet federal standards, nor must they be "plain, speedy and effective."  Id. at 524; Booth v.

15  Churner, 532 U.S. 731, 740 n.5 (2001).  Even when the prisoner seeks relief not available in

16  grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Booth, 532

17  U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative

18

19        [2]  In his opposition, plaintiff again claims he is "incapable/incompetent" to prosecute this
    action unless he is represented by counsel.  However, this action was stayed from January 26,
20  2011, until June 24, 2011, to permit plaintiff an opportunity to demonstrate that his medical
    condition prevented him from litigating this action.  Plaintiff filed multiple documents during the
21  stay.  On May 25, 2011, at the court's direction, counsel for defendant provided a declaration by
    A. Duenas, M.D., attesting to the provision of medical care to plaintiff, and declaring plaintiff
22  did not have an emergent medical condition and was not in need of immediate hospitalization.
    (Dkt. No. 82-1 at 2.)  Plaintiff confirms he is now receiving Enhanced Outpatient care from the
23  mental health care program.  Plaintiff has provided no medical or other probative evidence
    demonstrating that mental health care providers have determined plaintiff is mentally
24  incompetent.  Plaintiff's opposition is coherent, cites appropriate legal authorities, and is signed
    under penalty of perjury.  Moreover, on July 29, 2011, plaintiff filed a motion for leave to amend,
25  and a proposed amended complaint, demonstrating plaintiff's recognition of the futility of his
    continued prosecution against defendant Miller, and describing his wishes to proceed against
26  defendant Reed.  (Dkt. No. 97.)  The instant docket reflects plaintiff is capable of filing motions
    and responding to court orders.

1  process that could provide some sort of relief on the complaint stated, but no money." Id. at 734.

2  The fact that the administrative procedure cannot result in the particular form of relief requested

3  by the prisoner does not excuse exhaustion because some sort of relief or responsive action may

4  result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes

5  of exhaustion requirement include allowing prison to take responsive action, filtering out

6  frivolous cases, and creating administrative records).

7         A prisoner need not exhaust further levels of review once he has either received

8  all the remedies that are "available" at an intermediate level of review, or has been reliably

9  informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d

10  926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief

11  remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

12  remained available, whether at unexhausted levels or through awaiting the results of the relief

13  already granted as a result of that process.  Brown, 422 F.3d at 936-37.

14         As noted above, the PLRA requires proper exhaustion of administrative remedies.

15  Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an

16  agency's deadlines and other critical procedural rules because no adjudicative system can

17  function effectively without imposing some orderly structure on the course of its proceedings."

18  Id. at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to

19  properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an

20  untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

21         The State of California provides its prisoners the right to appeal administratively

22  "any departmental decision, action, condition or policy which they can demonstrate as having an

23  adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides

24  them the right to file appeals alleging misconduct by correctional officers and officials.  Id. at

25  § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner

26  must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

4

1 on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and

2 (4) third level appeal to the Director of the California Department of Corrections and

3 Rehabilitation.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code

4 Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the

5 exhaustion requirement under § 1997e(a).  Id. at 1237-38.

6        Non-exhaustion under § 1997e(a) is an affirmative defense which should be

7 brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

8 Procedure 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court

9 may look beyond the pleadings to determine whether a plaintiff exhausted his administrative

10 remedies.  Id.  at 1119-20.

11        B.  Analysis re Exhaustion

12        The instant complaint was filed on August 17, 2009.  Therefore, plaintiff was

13 required to exhaust his administrative remedies as to the instant claims on or before August 16,

14 2009.  Booth, 532 U.S. at 741.  Defendant provided the declaration of D. Foston, Chief of the

15 Inmate Appeals Branch, who provided a log of any appeals by plaintiff that were "accepted

16 and/or received and screened out at the Directors' level between January 1, 1997, and September

17 17, 2010." (Dkt. No. 53-1 at 2-3.)

18        1.  Log No. CMF-09-00982

19        Plaintiff filed a grievance requesting accommodation with an Americans with

20 Disabilities Act-compliant cell because plaintiff was having trouble pulling himself up from the

21 toilet, and kept bumping his head on the metal top bunk when getting in or out of bed.  (Dkt. No.

22 53-1 at 10.)  Plaintiff exhausted this grievance to the Director's Level of review, but there is no

23 mention of plaintiff's claims concerning the erroneous classification or wrongful placement in ad

24 seg, or any of the instant claims against defendant Miller or Reed in grievance CMF-09-00982.

25        2.  Log No. CMF-09-01537

26        Plaintiff filed a grievance challenging his single cell status ("S" suffix) change

1    resulting from the April 22, 2009 classification committee hearing.  (Dkt. No. 53-1 at 12.)  This

2    grievance was exhausted to the Director's Level of review on October 6, 2009, but does not

3    challenge the alleged wrongful reference to "forcible rape" conviction rather than "statutory

4    rape" conviction, and makes no reference to the instant claims lodged against defendant Reed.

5    At the final level of review, plaintiff noted:

6              I'm not raising new issues just elaborating on how I was treated at
               CMF; no other prison would [have] taken my "S" suffix but
7              Vacaville staff because of counselor A. Miller, CCI, at Vacaville.

8              N. Grannis, Chief Inmate Appeals coordinator, know that the CDC
               128-G, dated 4-22-09, attached that, "stipulates that my "R" suffix
9              is due to P.C. 261(3) forcible rape is completely false because I
               filed an appeal on 3-31-07, requesting the "R" suffix to be removed
10             due to (1968) statutory rape conviction; Director's Response Sep.
               29, 2007).  This is only to prove show how negative and
11             discriminative Vacaville staff are against me by displaying such a
               false charge against me proving that my single cell was taken out
12             of discrimination toward [plaintiff].

13   (Dkt. No. 53-1 at 42.)  Plaintiff's language makes clear that he was not challenging the

14   designation for his conviction, but was only challenging the removal of his single cell status

15   designation.  But even if this court were to liberally construe this grievance as exhausting the

16   instant claims, the Director's Level decision was rendered on October 6, 2009, after the August

17   17, 2009 filing of the instant complaint.  Therefore, this grievance cannot serve to exhaust

18   plaintiff's administrative remedies prior to the filing of the instant action, as required under

19   Booth, 532 U.S. at 741.

20              3.  Log No. CMF-09-01483

21             On May 28, 2009, plaintiff filed an appeal claiming that defendant Miller had

22   again tampered with plaintiff's central file by changing plaintiff's conviction from statutory rape

23   to forcible rape, which was the same allegation plaintiff had raised in a lawsuit filed in 2000.

24   (Dkt. No. 53-1 at 28.)  The informal and first levels of review were bypassed, and on July 13,

25   2009, plaintiff's second level review was partially granted.  (Dkt. No. 53-1 at 29.)  Plaintiff was

26   informed that:

1

2

3

> When an error is made on a document contained in the central file, the document is not removed from the file, rather the error is corrected with an ink pen and the record is corrected with a supplemental document.

4  (Dkt. No. 53-1 at 30.)  Plaintiff was advised that the error was corrected with a CDCR 128-B

5  Informational Chrono dated June 10, 2009, and plaintiff was provided with a copy.  (Dkt. No. 53-

6  1 at 31.)  Plaintiff submitted his third level appeal on August 24, 2009, but it was cancelled as

7  untimely because appeals were due within fifteen working days.  (Dkt. No. 53-1 at 7.)

8        In any event, plaintiff submitted his third level appeal on August 24, 2009, which

9  was after plaintiff filed the instant action on August 17, 2009.  Therefore,  grievance CMF-09-

10  01483 cannot serve to exhaust plaintiff's administrative remedies prior to the filing of the instant

11  action, as required under Booth, 532 U.S. at 741.

12                4.  Log No. HDSP-A-10-0294

13        On January 18, 2010, plaintiff, while housed at High Desert State Prison, filed an

14  appeal requesting a copy of the June 19, 2009 classification chrono so that plaintiff could ensure

15  that any reference to forcible rape was blotted out.  (Dkt. No. 53-1 at 49.)  However, because this

16  grievance was filed after the August 17, 2009 complaint was filed herein, it cannot serve to

17  exhaust administrative remedies prior to suit as required by Booth, 532 U.S. at 741.

18        Accordingly, plaintiff's claims against defendant Miller should be dismissed

19  without prejudice based on plaintiff's failure to exhaust administrative remedies prior to filing

20  this action in federal court.

21  IV.  Motion for Summary Judgment

22        However, even assuming, arguendo, plaintiff had exhausted his claims against

23  defendant Miller, defendant Miller is entitled to summary judgment, as set forth below.

24            A.  Legal Standard for Summary Judgment

25        Summary judgment is appropriate when it is demonstrated that the standard set

26  forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if

1    the movant shows that there is no genuine dispute as to any material fact and the movant is

2    entitled to judgment as a matter of law. " Fed. R. Civ. P. 56(a).[3]

3                          Under summary judgment practice, the moving party always bears
                           the initial responsibility of informing the district court of the basis
4                          for its motion, and identifying those portions of "the pleadings,
                           depositions, answers to interrogatories, and admissions on file,
5                          together with the affidavits, if any," which it believes demonstrate
                           the absence of a genuine issue of material fact.

6

7    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

8    56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

9    only prove that there is an absence of evidence to support the non-moving party's case." Nursing

10   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

11   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

12   Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

13   burden of production may rely on a showing that a party who does have the trial burden cannot

14   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

15   should be entered, after adequate time for discovery and upon motion, against a party who fails to

16   make a showing sufficient to establish the existence of an element essential to that party's case,

17   and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

18   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

19   necessarily renders all other facts immaterial." Id. at 323.

20               Consequently, if the moving party meets its initial responsibility, the burden then

21   shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.

22   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting

23   to establish the existence of such a factual dispute, the opposing party may not rely upon the

24

25        [3]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
     2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule
26   56, "[t]he standard for granting summary judgment remains unchanged."

1  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

2  form of affidavits, and/or admissible discovery material in support of its contention that such a

3  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

4  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

5  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

6  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

7  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

8  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

9  1436 (9th Cir. 1987).

10        In the endeavor to establish the existence of a factual dispute, the opposing party

11  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

12  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

13  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

14  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

15  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

16  committee's note on 1963 amendments).

17        In resolving a summary judgment motion, the court examines the pleadings,

18  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

19  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

20  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

21  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

22  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

23  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

24  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

25  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

26  show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

1   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2   'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

3              By order filed August 13, 2010, the court advised plaintiff of the requirements for

4   opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt.

5   No. 30); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

6   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

7              B.  Undisputed Facts

8              1.  Defendant Miller retired from CMF on October 19, 2007.

9              2.  Defendant Miller has not returned to work in any capacity at CMF since her

10  2007 retirement.

11             3.  Defendant Miller has not handled or had access to the central prison files of

12  inmates of the California Department of Corrections and Rehabilitation ("CDCR") since her

13  retirement in October of 2007.

14             C.  Analysis

15             Plaintiff contends that in 2009 defendant A. Miller was still a counselor at CMF,

16  and alleges defendant Miller conspired with defendant Reed to have plaintiff held in ad seg, and

17  also that defendant Miller allegedly changed plaintiff's conviction back to forcible rape rather

18  than statutory rape.  However, plaintiff adduced no probative evidence demonstrating that

19  defendant Miller was employed at CMF or had access to CDCR records in 2009.  Plaintiff

20  failed to refute defendant Miller's declaration to the contrary.[4]  Because it is factually impossible

21  for defendant Miller to have participated in the 2009 allegations set forth by plaintiff, defendant

22  Miller is entitled to summary judgment on plaintiff's 2009 allegations.

23             It  appears the 1996 and 2000 allegations against defendant Miller were pled as

24  background information.  However, in the event plaintiff is attempting to litigate these earlier

25

26      [4]  Indeed, in plaintiff's July 26, 2011 motion to amend, plaintiff concedes he "can't prove
    otherwise."  (Dkt. No. 97 at 1.)

1    claims against defendant Miller, those claims are barred by the statute of limitations.

2              California law determines the applicable statute of limitations in this § 1983

3    action.  Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999).  Until December 31, 2002, the

4    applicable state limitations period was one year.  See Jones v. Blanas, 393 F.3d 918, 927 (9th

5    Cir. 2004) (citing Cal. Civ. P. Code § 340(3) (West Supp. 2002); see also Maldonado v.

6    Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).[5]  Effective January 1, 2003, the applicable

7    California statute of limitations was extended to two years.  See Jones, 393 F.3d at 927 (citing

8    Cal. Civ. P. Code § 335.1).  However, the new statute of limitations period does not apply

9    retroactively.  Maldonado, 370 F.3d at 955.  California law also tolls for two years the limitations

10   period for inmates "imprisoned on a criminal charge, or in execution under the sentence of a

11   criminal court for a term less than for life."  Cal. Civ. P. Code § 352.1.[6]

12             It appears that plaintiff became aware of the alleged wrongful acts of defendant

13   Miller in 2000.  Plaintiff's awareness occurred prior to 2003; thus, the applicable statute of

14   limitations period is one year because plaintiff's knowledge preceded the 2003 extension of the

15   limitations period.  Maldonado, 370 F.3d at 955.

16             Plaintiff is entitled to tolling of the statute of limitations period for an additional

17   two years.  Jones, 393 F.3d at 927 n.5.  Therefore, plaintiff was required to bring his civil rights

18   claims on or before 2003.  Under the mailbox rule, plaintiff filed the instant action on July 25,

19   2009.  (Dkt. No. 1 at 56.)  See Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner

20   filing is dated from the date prisoner delivers it to prison authorities).

21             Federal courts generally apply the forum state's law regarding equitable tolling.

22   _____

23        [5]  Federal law governs when plaintiff's § 1983 claims accrued and when the limitations
     period begins to run.  Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998).
24   Under federal law, "the claim generally accrues when the plaintiff 'knows or has reason to know
     of the injury which is the basis of the action.'"  Id. (citations omitted).

25        [6]  "The California courts have read out of the statute the qualification that the period of
     incarceration must be 'for a term less than for life' in order for a prisoner to qualify for tolling."
26   Jones, 393 F.3d at 927 n.5 (citations omitted).

1   Fink, 192 F.3d at 914.  Under California law, however, a plaintiff must meet three conditions to

2   equitably toll a statute of limitations:  (1) he must have diligently pursued his claim; (2) his

3   situation must be the product of forces beyond his control; and (3) the defendants must not be

4   prejudiced by the application of equitable tolling.  See Hull v. Central Pathology Serv. Med.

5   Clinic, 28 Cal. App. 4th 1328, 1335, 34 Cal. Rptr. 2d 175 (1994).

6           Plaintiff has argued no facts demonstrating he is entitled to equitable tolling for

7   part or all of the lengthy six year delay in filing in federal court.  Review of the record

8   demonstrates plaintiff has not diligently pursued the 1996 and 2000 claims.  Thus, plaintiff is not

9   entitled to equitable tolling.

10          Plaintiff's 1996 and 2000 claims against defendant Miller were filed outside the

11  statute of limitations period and are therefore time-barred.

12          Accordingly, defendant Miller is entitled to summary judgment.  This action will

13  proceed as to defendant Reed, the sole remaining defendant herein.

14  V.   Conclusion

15          IT IS RECOMMENDED THAT:

16          1.  Defendant Miller's motion to dismiss (dkt. no. 53) be granted; and

17          2.  Defendant Miller's motion for summary judgment (dkt. no. 53) be granted;

18          3.  Plaintiff's 2009 claims against defendant Miller be dismissed with prejudice;

19  and

20          4.  Plaintiff's 1996 and 2000 claims against defendant Miller be dismissed as

21  time-barred.

22          These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

24  days after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

1   objections shall be filed and served within fourteen days after service of the objections.  The

2   parties are advised that failure to file objections within the specified time may waive the right to

3   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4   DATED:  August 5, 2011

5

6

7   _____

KENDALL J. NEWMAN

8   UNITED STATES MAGISTRATE JUDGE

9   /mest3307.mtd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26