1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MORRIS MESTER,

11           Plaintiff,                    No. 2:09-cv-3307 KJM KJN P

12      vs.

13   MILLER AND REED,                      ORDER AND

14           Defendants.                   ORDER TO SHOW CAUSE

15   _____/

16           Plaintiff is a prisoner who is proceeding without counsel and in forma pauperis.

17   Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.  On August 8, 2011, the undersigned issued

18   findings and recommendations recommending that plaintiff's claims against defendant Miller be

19   dismissed based on evidence demonstrating that plaintiff failed to exhaust his administrative

20   remedies as to his claims raised in the instant complaint.  The court turns now to defendant Reed,

21   the only other remaining defendant.  On October 28, 2010, the court ordered the United States

22   Marshal to serve the complaint on defendants.  But process directed to defendant Reed was

23   returned unserved because "unable to locate."  (Dkt. No. 63.)  However, as noted in the August 8,

24   2011 findings and recommendations, none of the administrative grievances filed by plaintiff

25   challenged the claims raised in plaintiff's complaint. Therefore, plaintiff is directed to show

26   cause why plaintiff's claims against defendant Reed should not be dismissed based on plaintiff's

1

failure to exhaust administrative remedies prior to filing the instant action.

I. <u>Plaintiff's Allegations as to Defendant Reed</u>

On April 9, 2009, plaintiff was transferred back to the California Medical Facility ("CMF"). Plaintiff alleges he was returned to administrative segregation ("ad seg") on April 15, 2009, based on 2000 charges that plaintiff was being over familiar with M.T.A. Reed. When plaintiff asked for the paperwork stating plaintiff was locked up and transferred in 2001 for being overly familiar with staff, plaintiff states he was provided "another lock-up order dated 11-25-00." (Dkt. No. 1 at 3.) Plaintiff asked for confirmation of a write-up, a 115 from defendant Reed in 2000, plaintiff allegedly received a 128 B Chrono in the mail that was not dated. Plaintiff contends this chrono was written after plaintiff arrived at CMF. Plaintiff contends defendant A. Miller was still a counselor at CMF, and alleges defendant Miller conspired with defendant Reed to have plaintiff held in ad seg. It appears plaintiff contends he was wrongfully placed in ad seg on April 15, 2009.

II. <u>Legal Standard re Exhaustion</u>

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. <u>Porter</u>, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." <u>Id.</u> at 524; <u>Booth v. Churner</u>, 532 U.S. 731, 740 n.5 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. <u>Booth</u>, 532

U.S. at 741.  A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Id. at 734. The fact that the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance.  See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available.  Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process.  Brown, 422 F.3d at 936-37.

As noted above, the PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides them the right to file appeals alleging misconduct by correctional officers and officials.  Id. at § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner

1    must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

2    on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and

3    (4) third level appeal to the Director of the California Department of Corrections and

4    Rehabilitation.  <u>Barry v. Ratelle</u>, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal.Code

5    Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the

6    exhaustion requirement under § 1997e(a).  <u>Id.</u> at 1237-38.

7            Non-exhaustion under § 1997e(a) is an affirmative defense which should be

8    brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil

9    Procedure 12(b).  <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).  However, where it is

10   clear from the face of Plaintiff's complaint that he has not yet exhausted the administrative

11   grievance procedure, this action must be dismissed.  42 U.S.C. § 1997e(a); <u>Wyatt</u>, 315 F.3d at

12   1120 ("A prisoner's concession to nonexhaustion is a valid grounds for dismissal. . . ."); <u>see</u> <u>also</u>

13   <u>Bennett v. King</u>, 293 F.3d 1096, 1098 (9th Cir. 2002); <u>Metoyer v. Post</u>, 121 Fed.Appx. 749 (9th

14   Cir. 2005).  Finally, the court may look beyond the pleadings to determine whether a plaintiff

15   exhausted his administrative remedies.  <u>Wyatt</u>, 315 F.3d at 1119-20.

16   III.  <u>Analysis</u>

17          The instant complaint was filed on August 17, 2009.  Therefore, plaintiff was

18   required to exhaust his administrative remedies as to his claims against defendant Reed on or

19   before August 16, 2009.  <u>Booth</u>, 532 U.S. at 741.  D. Foston, Chief of the Inmate Appeals

20   Branch, provided a log of any appeals by plaintiff that were "accepted and/or received and

21   screened out at the Directors' level between January 1, 1997, and September 17, 2010."  (Dkt.

22   No. 53-1 at 2-3.)  The court will address the pertinent grievances below.

23          1. Log No. CMF-09-00982

24          Grievance CMF-09-00982 addressed plaintiff's request for an Americans with

25   Disabilities Act ("ADA")-compliant cell.  (Dkt. No. 53-1 at 10.)  Plaintiff exhausted this

26   grievance to the Director's Level of review, but there is no mention of plaintiff's claims

4

concerning the alleged wrongful placement in administrative segregation ("ad seg"), or of plaintiff's claims against defendant Reed in grievance CMF-09-00982.

2.  Log No. CMF-09-01537

Grievance CMF-09-01537 challenged plaintiff's loss of his single cell status ("S" suffix) resulting from the April 22, 2009 classification committee hearing.  (Dkt. No. 53-1 at 12.) This grievance was exhausted to the Director's Level of review on October 6, 2009, but makes no reference to the alleged wrongful placement in ad seg or any of the instant claims lodged against defendant Reed.  (Dkt. No. 53-1 at 42.)  But even if this court were to liberally construe this grievance as exhausting any of plaintiff's claims against defendant Reed, the Director's Level decision was rendered on October 6, 2009, after the August 7, 2009 filing of the instant complaint.  Therefore, this grievance cannot serve to exhaust plaintiff's administrative remedies against defendant Reed prior to the filing of the instant action, as required under Booth, 532 U.S. at 741.

3.  Log No. CMF-09-01483

On May 28, 2009, plaintiff filed an appeal claiming that defendant Miller had again tampered with plaintiff's central file by changing plaintiff's conviction from statutory rape to forcible rape, which was the same allegation plaintiff had raised in a lawsuit filed in 2000. (Dkt. No. 53-1 at 28.)  Plaintiff submitted his third level appeal on August 24, 2009, but it was cancelled as untimely because appeals were due within fifteen working days.  (Dkt. No. 53-1 at 7.)  Thus, Grievance CMF-09-01483 was not exhausted through the third level of review. Grievance CMF-09-01483 does not mention plaintiff's claims concerning the alleged wrongful placement in ad seg, or defendant Reed, or any alleged conspiracy between defendants Miller and Reed.  Therefore, grievance CMF-09-01483 does not exhaust plaintiff's claims against defendant Reed.

////

////

1        4.  Log No. HDSP-A-10-0294

2        On January 18, 2010, while housed at High Desert State Prison, plaintiff filed an

3  appeal requesting a copy of the June 19, 2009 classification chrono so that plaintiff could ensure

4  that any reference to forcible rape was blotted out.  (Dkt. No. 53-1 at 49.)  However, because this

5  grievance was filed after the August 17, 2009 complaint was filed herein, it cannot serve to

6  exhaust administrative remedies prior to suit as required by Booth, 532 U.S. at 741.

7        5.  Documents Appended to Plaintiff's Complaint

8        In Exhibit H, plaintiff provided copies of documents demonstrating his efforts to

9  exhaust administrative remedies, which were screened out as duplicate or untimely.  (Dkt. No. 1

10  at 38-52.)

11        In one document challenging the screening out of plaintiff's appeal as a duplicate,

12  plaintiff mentions Log No. CMF-09-1053, which plaintiff claims was an ADA appeal.  (Dkt. No.

13  1 at 39.)  Plaintiff states that the "issues transfer and 'S' suffix, single cell status, is a non ADA

14  issue and cannot be raised on a 1824 form."  (Id.)  The next page refers to plaintiff's attempt to

15  challenge the error in his conviction, and alleges defendant Miller allegedly tampered with

16  plaintiff's record.  (Dkt. No. 1 at 40.)  A copy of the June 2, 2009 grievance marked "duplicate

17  issue" reflects plaintiff challenged defendant Miller's alleged falsification of documents and

18  claims plaintiff was placed in ad seg twice because of defendant Miller.  (Dkt. No. 1 at 41.)  The

19  attachment to the June 2, 2009 grievance refers to plaintiff's prior lawsuit against defendant

20  Miller, and claims plaintiff was "put in ad-set on made up fabrications" and that plaintiff's

21  conviction was changed again from statutory to forcible rape.  (Dkt. No. 1 at 42.)  Plaintiff then

22  alleges his ingoing and outgoing mail were stopped and alleges his legal mail is opened and read

23  before its delivery.  (Id.)

24        On May 20, 2009, plaintiff signed another grievance, which was marked "non-

25  emergency" and "duplicate issue."  (Dkt. No. 1 at 43.)  In this grievance, plaintiff states he was

26  placed in ad seg on April 15, 2009, due to the claim of being transferred from CMF in 2000 due

6

1   to plaintiff's being overly familiar with staff.  Plaintiff states he was really placed in ad seg in

2   2000 because plaintiff would not agree to dismiss a lawsuit against a counselor for tampering

3   with plaintiff's central file, who still works at CMF, which plaintiff alleges is actually why

4   plaintiff was placed in ad seg on April 15, 2009.  (Dkt. No. 1 at 43-44.)  Plaintiff then states:

5   "But, used Nurse Reed, who supposedly wrote the 128-B, overfamiliar in 2000, to say [illegible]

6   a threat in 2009."  (Id. at 44.)  Plaintiff goes on to state he suffers severe incontinence requiring

7   diapers, and alleges all medical records documenting plaintiff's incontinence have been removed

8   from plaintiff's medical chart, allegedly because of lawsuits plaintiff filed, but doctors have

9   prescribed plaintiff medical supplies of diapers, bags and gloves to address this problem.  It

10  appears plaintiff raised these health issues to bolster his claim that he requires single cell status

11  because inmates don't want to live with plaintiff's bowel incontinence problem.  (Dkt. No. 1 at

12  45.)  This is confirmed by the action plaintiff requests in this grievance:

13              Request due to the serious nature of my medical condition of
                incontinence in foreseeing the future that this be answered as an
14              emergency and "S" Suffix restored until the prison I'm housed at
                HDSP or PVSP makes the decision after examination by a doctor.
15

16  (Dkt. No. 1 at 43.)  Plaintiff asked that since this is a nonadverse transfer, plaintiff be given the

17  choice of R.J. Donovan, which is closer to plaintiff's family.  (Dkt. No. 1 at 45.)

18              Plaintiff also provides a copy of a June 29, 2009 grievance, which challenge the

19  placement of the "R" suffix on plaintiff's file, which plaintiff alleged was based on the alteration

20  of plaintiff's "statutory" rape conviction to read "forcible" rape.  (Dkt. No. 1 at 47.)  This appeal

21  was marked "Cancel."  (Id.)

22              Plaintiff then provides a series of Appeal Screening forms which contend

23  plaintiff's appeals were untimely submitted, but because these appeals were screened out, there is

24  no log number to connect the screening form with the grievance plaintiff submitted.  (Dkt. No. 1

25  at 48, 50, 52.)  However, plaintiff was informed that he needed to provide a valid explanation for

26  submission of a late appeal on at least two occasions.  (Dkt. No. 1 at 48, 52.)

1      Out of all the documents appended to plaintiff's complaint, only the grievance

2  signed May 20, 2009, mentions defendant Reed, and references plaintiff's alleged wrongful

3  placement in ad seg on April 15, 2009.  (Dkt. No. 1 at 43-44.)  However, although plaintiff

4  mentions the alleged wrongful housing in ad seg, plaintiff claims defendant Miller was the reason

5  plaintiff was wrongfully placed in ad seg on April 15, 2009, and alleges defendant Miller used

6  defendant Reed to have plaintiff placed in ad seg.  (Dkt. No. 1 at 44.)  Moreover, the emphasis of

7  this grievance appears to be plaintiff's effort to retain single cell status and to request the prison

8  to which he would be transferred.  This was the action requested; plaintiff did not seek to have

9  his placement in ad seg overturned, or seek any other remedy against defendant Miller or Reed.

10      In any event, as evidenced by D. Foston's declaration, plaintiff failed to exhaust

11  his claims against defendant Reed to the Director's Level of Review.  Plaintiff was able to grieve

12  his single cell status to the Director's Level of Review.  (Dkt. No. 53-1 at 42.)  The record

13  demonstrates that plaintiff is familiar with the grievance process and knows how to obtain third

14  level reviews of his grievances.

15      Accordingly, it appears plaintiff's claims against defendant Reed should be

16  dismissed without prejudice based on plaintiff's failure to exhaust administrative remedies prior

17  to filing in federal court.  Plaintiff will be ordered to show cause, within thirty days, why

18  plaintiff's claims against defendant Reed should not be dismissed.

19  IV.  Motion to Amend

20      Finally, on July 29, 2011, plaintiff filed a motion to amend the complaint.

21  Plaintiff's motion was not, however, accompanied by a proposed amended complaint.  Rather,

22  plaintiff merged his motion with his new complaint in one document.  Normally, plaintiff's

23  motion would be denied, and plaintiff would be granted leave to renew his motion if

24  accompanied by a separate, proposed amended complaint.  However, as discussed more fully

25  below, allowing plaintiff to amend would be futile.

26  ////

1          A.  Proposed Amended Complaint

2          Plaintiff claims that in April of 2009, when plaintiff returned to CMF, defendants

3  K. Allen, Flores, F.C. [illegible], and B. Reed conspired with Warden Dickinson to lock plaintiff

4  up in ad seg "out of reprisals/discriminatory actions."  (Dkt. No. 97 at 2.)  Plaintiff alleges

5  various defects with the paperwork placing plaintiff in ad seg on April 15, 2009.  Plaintiff

6  contends an unidentified one of these defendants also altered plaintiff's conviction for "statutory"

7  rape to "forcible" rape, which resulted in the placement of an "R" suffix on plaintiff's file.  It

8  appears plaintiff contends defendants Allen, Flores, "F.C.," Reed, and Dickinson conspired to

9  place plaintiff in ad seg in retaliation.  In support of his allegations, plaintiff presents the same

10  documentary evidence provided with his original complaint.

11          There is no "K. Allen" or "F.C. [illegible]" named as defendants in plaintiff's

12  original complaint, so it appears plaintiff seeks leave to add two new defendants.  In the original

13  complaint, plaintiff named Flores and Dickinson as defendants, claiming they were co-

14  conspirators with the other named defendants.  However, plaintiff does not claim these

15  defendants acted "out of reprisals/discriminatory actions," or in retaliation in the original

16  complaint.

17          B.  Legal Standards

18          Federal Rule of Civil Procedure 15(a) is to be applied liberally in favor of

19  amendments and, in general, leave shall be freely given when justice so requires.  See Janicki

20  Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994).  Motions under Rule 12 are not

21  "responsive pleadings."  Therefore, filing such a motion, by itself, does not bar plaintiff from

22  amending the complaint once as a matter of right.  See St. Michael's Convalescent Hosp. v. State

23  of California, 643 F.2d 1369, 1374 (9th Cir. 1980) (Fed. R. Civ. P. 12 motion).  Some courts,

24  including the Ninth Circuit, allow plaintiffs to amend once as a matter of right even after a

25  motion to dismiss the complaint has been granted, provided the action has not been dismissed

26  and the amended complaint is otherwise timely ( i.e., not barred by the statute of limitations).

1    See Doe v. United States, 58 F.3d 494, 496-97 (9th Cir. 1995) (tort claims should have been

2    dismissed with leave to amend).  Courts generally consider four factors in determining the

3    propriety of a motion for leave to amend:  bad faith, undue delay, prejudice to the opposing party,

4    and futility of amendment.  Roth v. Garcia Marquez, 942 F.2d 617, 628 (9th Cir. 1991).

5           C. Application

6           Here, while the court finds no evidence that plaintiff seeks leave to file his first

7    amended complaint in bad faith or for purposes of undue delay, it appears that it would be futile

8    to add reprisal or retaliation or conspiracy claims to this action or to add new defendants because

9    plaintiff has failed to first exhaust his administrative remedies.

10          In his motion, plaintiff wishes to add reprisal or retaliation and conspiracy claims

11   against some of the defendants named in the original complaint as well as against two newly-

12   named defendants.  However, as set forth in the findings and recommendations filed August 8,

13   2011, and in the order to show cause above, it is clear that plaintiff has not exhausted his

14   administrative remedies in connection with these claims.  Therefore, the court finds it is futile for

15   plaintiff to add the new reprisal or retaliation and conspiracy claims or the newly-named

16   defendants to this action.

17          To the extent plaintiff is attempting to renew his original claims against

18   defendants Flores and Dickinson from the original complaint, plaintiff's effort is unavailing.

19   Plaintiff's claims against defendants Flores and Dickinson were dismissed on October 6, 2010,

20   based on plaintiff's failure to state a cognizable civil rights claim against them.  (Dkt. No. 36.)

21   Indeed, on July 26, 2010, plaintiff was granted leave to amend his complaint to attempt to state a

22   cognizable claim against these defendants (dkt. no. 24), but plaintiff failed to do so.  Moreover,

23   the evidence plaintiff provides is not new evidence demonstrating a conspiracy or retaliation by

24   these defendants.  Rather, it is the same evidence plaintiff presented with his original complaint

25   on August 17, 2009.  Accordingly, plaintiff's motion to amend his complaint to renew his

26   original claims against defendants Dickinson and Flores is denied.

1        Therefore, plaintiff's July 29, 2011 motion to amend is denied without prejudice.

2   V.   Conclusion

3        Accordingly, IT IS HEREBY ORDERED that:

4        1.  Within thirty days from the date of this order, plaintiff shall show cause, if any

5   he may have, why plaintiff's claims against defendant Reed should not be dismissed based on

6   plaintiff's failure to exhaust his administrative remedies before filing the instant action; and

7        2.  Plaintiff's July 29, 2011 motion to amend (dkt. no. 97) is denied without

8   prejudice.

9   DATED:  August 9, 2011

10

11

12   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

13   mest3307.osc

14

15

16

17

18

19

20

21

22

23

24

25

26