IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MORRIS MESTER,

      Plaintiff,                    No. 2:09-cv-3307 KJM KJN P

    vs.

REED,

      Defendant.                FINDINGS AND RECOMMENDATIONS

                                /

          Plaintiff is a prisoner who is proceeding without counsel and in forma pauperis. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. On September 26, 2011, plaintiff's claims against defendant Miller were dismissed based on evidence demonstrating that plaintiff failed to exhaust his administrative remedies, and that defendant Miller was entitled to summary judgment because it was factually impossible for defendant Miller to have participated in the 2009 allegations inasmuch as she retired on October 19, 2007.[1] (Dkt. Nos. 98, 107.) The court turns now to the motion to dismiss based on multiple grounds filed by defendant Reed, the sole remaining defendant. On July 25, 2012, plaintiff was granted an additional thirty days in which

---

[1] The court need not reopen briefing under Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), on the November 18, 2010 motion, because the record makes clear that plaintiff could allege no facts demonstrating that he could prevail on the claims resolved by the September 26, 2011 order.

to file a supplemental opposition, or to rely on his prior opposition. (Dkt. No. 122.) Thirty days have now passed, and plaintiff has not responded in any way to the July 25, 2012 order. Accordingly, the court will address the motion to dismiss based on plaintiff's briefing filed prior to the July 25, 2012 order.[2] Defendant did not file a reply.

For the reasons set forth below, the court finds that defendant Reed's motion should be granted.

I. <u>Plaintiff's Allegations as to Defendant Reed</u>

On April 9, 2009, plaintiff was transferred back to the California Medical Facility ("CMF"). Plaintiff alleges he was returned to administrative segregation ("ad seg") on April 15, 2009, based on 2000 charges that plaintiff was being overly familiar with Medical Technical Assistant Reed. When plaintiff asked for the paperwork stating plaintiff was locked up and transferred in 2001 for being overly familiar with staff, plaintiff states he was provided "another lock-up order dated 11-25-00." (Dkt. No. 1 at 3.) When plaintiff asked for confirmation of a write-up, or a CDC-115 from defendant Reed in 2000, plaintiff allegedly received a 128-B Chrono in the mail that was not dated. Plaintiff contends this chrono was written after plaintiff arrived at CMF on April 9, 2009. Plaintiff contends defendant A. Miller was still a counselor at CMF, and alleges defendant Miller conspired with defendant Reed to have plaintiff held in ad seg. Plaintiff alleges that his central file does not contain a rules violation report ("CDC-115") for being overly familiar with defendant Reed, or a CDC 128- B supporting the CDC 114-D placement in ad seg. Plaintiff contends he was not overly familiar with defendant Reed, and that Reed violated plaintiff's Fourteenth Amendment right to due process by making a false report against plaintiff.

---

[2] On May 25, 2012, plaintiff filed an opposition, and on June 13, 2012, plaintiff filed a document entitled "Objections to Findings and Recommendations" (dkt. no. 121). No findings and recommendations are presently pending, and plaintiff addresses his claims as to defendant Reed in the objections; thus, in an abundance of caution, the court will construe both filings as plaintiff's opposition. (Dkt. Nos. 120, 121.)

II. Statute of Limitations

As noted in this court's prior findings and recommendations as to defendant Miller, it appears the 2000 allegations were pled as background information. However, in the event plaintiff is attempting to litigate a 2000 claim against defendant Reed, such claim is barred by the statute of limitations.

California law determines the applicable statute of limitations in this § 1983 action. Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999). Until December 31, 2002, the applicable state limitations period was one year. See Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (citing Cal. Civ. P. Code § 340(3) (West Supp. 2002); see also Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).[3] Effective January 1, 2003, the applicable California statute of limitations was extended to two years. See Jones, 393 F.3d at 927 (citing Cal. Civ. P. Code § 335.1). However, the new statute of limitations period does not apply retroactively. Maldonado, 370 F.3d at 955. California law also tolls for two years the limitations period for inmates "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal. Civ. P. Code § 352.1.[4]

Plaintiff declares under penalty of perjury that he "did not ever receive a write up of any kind from Reed in 2000." (Dkt. No. 120 at 1.) However, plaintiff provided a copy of an Administrative Segregation Placement Notice (CDC 114-D) that sets forth defendant Reed's allegations that plaintiff was acting overly familiar and threatening, dated November 25, 2000, and bears plaintiff's signature. (Dkt. No. 1 at 25.) The form also notes that plaintiff waived his right to 72 hours preparation time, and requested no witnesses, and the waiver was signed by

---

[3] Federal law governs when plaintiff's § 1983 claims accrued and when the limitations period begins to run. Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998). Under federal law, "the claim generally accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" Id. (citations omitted).

[4] "The California courts have read out of the statute the qualification that the period of incarceration must be 'for a term less than for life' in order for a prisoner to qualify for tolling." Jones, 393 F.3d at 927 n.5 (citations omitted).

3

1  plaintiff, and dated November 27, 2000.  (Id.)  Thus, plaintiff was aware of defendant Reed's
2  allegations by November 25, 2000.  Plaintiff's awareness occurred prior to 2003; thus, the
3  applicable statute of limitations period is one year because plaintiff's knowledge preceded the
4  2003 extension of the limitations period.  Maldonado, 370 F.3d at 955.

5        Plaintiff is entitled to tolling of the statute of limitations period for an additional
6  two years.  Jones, 393 F.3d at 927 n.5.  Therefore, plaintiff was required to bring his civil rights
7  claims on or before November 25, 2003.  Under the mailbox rule, plaintiff filed the instant action
8  on July 25, 2009.  (Dkt. No. 1 at 56.)  See Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se
9  prisoner filing is dated from the date prisoner delivers it to prison authorities).

10        Federal courts generally apply the forum state's law regarding equitable tolling.
11  Fink, 192 F.3d at 914.  Under California law, however, a plaintiff must meet three conditions to
12  equitably toll a statute of limitations:  (1) he must have diligently pursued his claim; (2) his
13  situation must be the product of forces beyond his control; and (3) the defendants must not be
14  prejudiced by the application of equitable tolling.  See Hull v. Central Pathology Serv. Med.
15  Clinic, 28 Cal. App. 4th 1328, 1335, 34 Cal. Rptr. 2d 175 (1994).

16        Plaintiff argued no facts demonstrating he is entitled to equitable tolling for part
17  or all of the lengthy delay in filing in federal court.  Review of the record demonstrates plaintiff
18  has not diligently pursued the 2000 claim.  Thus, plaintiff is not entitled to equitable tolling.

19        Accordingly, plaintiff's 2000 claim against defendant Reed was filed outside the
20  statute of limitations period and is therefore time-barred.

21        In connection with plaintiff's claim that defendant Reed pressed false accusations
22  against plaintiff in 2009, for which plaintiff was placed in ad seg, the 2009 allegation is not time-
23  barred.  In defendant Reed's April 16, 2009 letter, she stated that she would "never feel safe with
24  inmate Mester on the mainline."  (Dkt. No. 1 at 29.)  Although defendant Reed recited the acts
25  that allegedly occurred in 2000, she expressed a current fear, which formed the basis for
26  plaintiff's placement in ad seg:

>This employees' sentiment remains that [plaintiff's] continued presence at CMF poses a threat and to her personal safety. . . . Therefore, in the interest of the employee's safety and security of the institution, [plaintiff] shall be retained to Ad-Seg pending transfer.

(Dkt. No. 1 at 31.) Thus, the court views the 2009 allegations as a new claim that triggered a new accrual date for purposes of applying the statute of limitations. Plaintiff filed the instant action in 2009, the same year this claim accrued. Thus, plaintiff's 2009 allegations as to defendant Reed are not barred by the statute of limitations.

III. <u>Failure to State a Claim</u>

Plaintiff contends his due process rights were violated by defendant Reed's allegedly false statement claiming that plaintiff was overly familiar with staff, resulting in plaintiff's placement in ad seg on April 9, 2009. Defendants argue that not all deprivations imposed by prison authorities trigger the procedural protections of the Due Process Clause, and that the due process clause does not protect an inmate from being falsely accused of breaking prison rules. (Dkt. No. 116 at 6.)

The Fourteenth Amendment provides that no state shall deprive a person of life, liberty, or property without due process of law. These procedural guarantees apply only when a constitutionally-protected liberty or property interest is at stake. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569-70 (1972) (the Fourteenth Amendment's Due Process Clause does not trigger the need for procedural protections in every instance involving the state's deprivation of an individual's liberty, but only when there is a cognizable liberty interest at stake); see <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977). Protected liberty interests arise from the Fourteenth Amendment's Due Process Clause itself, or from state laws or regulations deemed to have created a liberty interest cognizable as a civil right. <u>Meachum v. Fano</u>, 427 U.S. 215, 224-27 (1976); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557-58 (1974) (describing minimum safeguards applicable before a cognizable liberty interest may be infringed, such as before withdrawing sentence credits a prisoner has already acquired).

5

To survive Rule 12(b)(6) review, the complaint must allege facts permitting a finding that the plaintiff has a liberty interest at stake, arising from either the Due Process clause or from state-created sources. <u>Sandin v. Conner</u>, 515 U.S. 472, 477-78 (1995) (examining whether state prison regulations or the Due Process Clause afforded inmate a protected liberty interest that would entitle him to procedural protections before transfer into segregation); see <u>Roth</u>, 408 U.S. at 569 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property").

> These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

<u>Sandin</u>, 515 U.S. at 482.

Changes in a prisoner's conditions of confinement can amount to a deprivation of a liberty interest constitutionally protected under the Due Process Clause, but only if the liberty interest in question is one of real substance. <u>Sandin</u>, 515 U.S. at 477-78. Only in those cases where a sufficiently substantial liberty interest is at stake must the court evaluate whether the process received comported with minimum procedural due process requirements. <u>Jackson v. Carey</u>, 353 F.3d 750, 755 (9th Cir. 2003) (internal quotations omitted). If the court answers the first question in the negative, the plaintiff has failed to state a section 1983 claim for a Fourteenth Amendment violation.

In order to find a liberty interest conferred by state law, the analysis focuses on the nature of the deprivation rather than on the language of any particular regulation, to avoid involvement of federal courts in day-to-day prison management. See <u>Sandin</u>, 515 U.S. at 479-82, 483; <u>see also</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997) (prisoner's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed, and administrative segregation falls within the terms of confinement ordinarily

1  contemplated by a sentence). Protected liberty interests created by state law are "generally
2  limited to freedom from restraint which . . . imposes atypical and significant hardship on the
3  inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84; see also
4  Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996) (prison classification created no "atypical
5  and significant hardship" because it would not invariably affect the duration of the inmate's
6  sentence) (interpreting Sandin).

7  First, plaintiff's efforts to cast these allegations as a violation of due process fail.
8  The documents appended to the complaint demonstrate that plaintiff was placed in ad seg on
9  April 15, 2009, based on staff safety concerns documented in plaintiff's central file. (Dkt. No. 1
10 at 31-33.) Plaintiff received a hearing on this placement on April 22, 2009, and the report
11 reflects plaintiff was present, and provided an opportunity to be heard. (Id.) Although plaintiff
12 does not articulate the length of his ad seg placement at CMF, the instant complaint bears
13 plaintiff's address at High Desert State Prison. (Dkt. No. 1.) In addition, plaintiff's certificate of
14 service was signed on July 25, 2009 (dkt. no. 1 at 56), suggesting that plaintiff was housed at
15 High Desert State Prison prior to July 25, 2009. Thus, it is reasonable to infer that plaintiff's
16 housing in ad seg at CMF was temporary in nature. Plaintiff alleges no loss of time credits or
17 impact on his prison sentence; indeed, plaintiff appears to complain that he suffered no prison
18 disciplinary in connection with defendant Reed's claims.

19 In May, the Ninth Circuit found that May's temporary placement in ad seg
20 pending a disciplinary hearing did not constitute a violation of due process because inmates have

> no liberty interest in freedom from state action taken within the sentence imposed, Sandin, 515 U.S. at ___, 115 S. Ct. at 2298 (quotation omitted), and the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence. Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986).

25 May, 109 F.3d at 565. Absent the existence of a protected liberty interest, plaintiff's due process
26 claims fail. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Plaintiff alleges no facts

1 demonstrating that his temporary placement in ad seg at CMF constituted an atypical and
2 significant hardship.  Further, even if plaintiff could demonstrate a protected liberty interest
3 existed, plaintiff fails to set forth any facts showing that he was denied the minimal procedural
4 protections he was due under federal law, <u>Wolff</u>, 418 U.S. at 556, or that he was found guilty
5 without "some evidence" supporting the finding, <u>Superintendent v. Hill</u>, 472 U.S. 445, 455-56
6 (1985).  Thus, plaintiff's claim that his temporary placement in ad seg violated due process
7 should be dismissed.

8          Second, to the extent plaintiff seeks to state a due process claim based solely on
9 the allegedly "false" allegations defendant Reed wrote about plaintiff, plaintiff fails to state a
10 cognizable claim under 42 U.S.C. § 1983.  A prisoner does not have a constitutional right to be
11 free from falsified disciplinary reports.  See <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir.
12 1989) (claims based on the falsity of charges, standing alone, do not state constitutional claims);
13 <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2nd Cir. 1986) ("[A] prison inmate has no
14 constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which
15 may result in the deprivation of a protected liberty interest."); <u>Hanrahan v. Lane</u>, 747 F.2d 1137,
16 1140-41 (7th Cir. 1984) (allegations of a false or fabricated disciplinary charge against an inmate
17 fail to state a claim under § 1983); <u>see</u> <u>also</u> <u>Buckley v. Gomez</u>, 36 F. Supp. 2d 1216, 1222 (S.D.
18 Cal. 1997) (citing <u>Freeman</u> and noting that "courts have held that a prisoner does not have a
19 constitutional right to be free from wrongfully issued disciplinary reports.").  Thus, to the extent
20 plaintiff seeks to assert a claim against defendant Reed because defendant Reed's allegations
21 against plaintiff were "false" or "fabricated," resulting in plaintiff's temporary placement in ad
22 seg, plaintiff's claim is insufficient to state a due process violation.

23          Therefore, plaintiff fails to state a cognizable due process claim as to defendant
24 Reed, and defendant's motion to dismiss should be granted.
25 ////
26 ////

## IV. Failure to Exhaust Administrative Remedies

In light of the above recommendation, the court need not address defendant's alternative argument that plaintiff failed to first exhaust his administrative remedies as to his claims against defendant Reed.

## V. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that defendant Reed's March 12, 2012 motion to dismiss (dkt. no. 116) be granted, and this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 10, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

mest3307.mtd2

9